MARTHA GARDNER WARD, Adm'rx of the Estate of Tammy Altice, Deceased, Plaintiff-Appellee, *v.* NICK KAMBEROS, Defendant-Appellant.

First District (5th Division) No. 60993

Opinion filed February 27, 1976.

704

Jonas Schey & Associates, of Chicago (Edwin A. Strugala, of counsel), for appellant.

Arnold and Kadjan, of Chicago (Sidney Z. Karasik and Martin Oberman, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This is an action for the wrongful death of Tammy Altice, a 19-month-old child. The case was originally brought by Eva Gardner, the child's grandmother. Following the death of Mrs. Gardner it was prosecuted by plaintiff, the child's mother and only heir-at-law. The second amended complaint alleged that the child died as a result of injuries suffered when she fell through the broken third-floor balustrade of a building owned by defendant. The complaint further alleged that defendant was negligent and had committed willful and wanton misconduct due to his failure to properly maintain the third-floor landing. The case went to the jury which returned a verdict for plaintiff in the amount of $24,000 and judgment was entered thereon.

On appeal defendant contends that (1) counsel for plaintiff, through argument and questioning of witnesses, brought to the attention of the jury facts concerning the condition of the building immaterial to any relevant issue, and that due to resultant prejudice a reversal of the judgment and a remandment for a new trial is warranted; and (2) the trial court erred in refusing to allow him to introduce evidence of plaintiff's abandonment of the child to rebut her allegation of having suffered a substantial pecuniary loss on her death.

At trial defendant was called by plaintiff as an adverse witness and testified that he is the owner of a three-story building located at the corner of Pulaski Road and Lawrence Avenue in Chicago. The building consists of two units, one with its entrance at 4750 North Pulaski, and the other with its entrance at 4001 West Lawrence. Several small shops are located on the first floor of the building; apartments are located on the upper floors. Defendant or his son would visit the building to collect the rent. Thus, defendant would be at the building at least once a month. Defendant testified that he never noticed any missing balusters on the third-floor landing of the unit in which plaintiff lived, nor was he ever informed of the existence of such a defect by plaintiff's family. However, defendant also testified that after "the baby had the accident, somebody repaired or replaced the pickets on the third floor at 4750. I didn't know anything about them, but if it was broke, we fixed it."

Eva Gardner, plaintiff's mother, rented a third floor apartment in the 4750 Pulaski unit in September 1968. She occupied the apartment with plaintiff, two sons, plaintiff's child and a niece. Four months later Mrs. Gardner's mother rented another apartment on the third floor.

Plaintiff and her sister, Maggie Dezern, testified that they inspected the apartment several days prior to Mrs. Gardner's rental of it. They noticed missing balusters on the third-floor landing and called this to the attention of the janitor. They further testified that they requested he repair the balusters before their mother moved in with "her [Mrs. Gardner's] baby." They claimed that the balusters had not been repaired on September 9, 1969, the date of the occurrence which resulted in the death of the little girl. Plaintiff admitted that she never directly informed defendant that the balustrade was in disrepair.

No witnesses were called who could testify to having seen the child fall through the third-floor balustrade. It was adduced that shortly after 2 p.m. on September 9 the child was found lying on the tiled floor of the lobby of the 4750 Pulaski building by Mrs. Dezern. The distance from the floor of the lobby to the third-floor landing is approximately 40 feet. The record indicates that shortly before the child was found in the lobby, Mrs. Gardner had given her two young nieces change to buy candy. The girls rushed out the front door of her apartment. Mrs. Gardner and plaintiff were in the kitchen. Plaintiff noticed her daughter walking toward the partially open door. A very short time later plaintiff heard her sister scream, and Mrs. Dezern entered the apartment carrying the child. The youngster died on September 14, 1969. She had suffered a skull fracture and a fracture of the humerus (upper portion) of one arm.

Norman Law, a Chicago police officer, was called by plaintiff. He testified that on September 14, 1969, in the course of his investigation into the death of Tammy Altice, he visited the scene of the occurrence. Officer Law identified a photo as depicting the third-floor landing area of the 4750 unit as it appeared at the time of his investigation. There appeared to be newly installed balusters in the balustrade. Officer Law was later recalled by defendant at which time he testified that, in his opinion, if two pickets had been missing in the balustrade, there would have been sufficient space for a child to fall through.

Edward Kozmer, a city building inspector, testified for plaintiff that he viewed the building in question in October 1969. He found the third-floor landing area to be in disrepair. He was asked to examine a photo of the third-floor landing, taken in April 1970, which depicted repaired balusters in the balustrade. Over defense objections, Kozmer testified that shoddy materials and improper techniques had been used in making the repairs.

Adam Gaertner, a janitor employed at the building in question, testified on behalf of defendant that no one in plaintiff's family had ever told him that there were missing balusters on the third floor of the 4750 unit. He could not recall seeing any missing "pickets" prior to September 9, 1969. He admitted, however, that on the morning of September 10, 1969, he found two balusters missing on the third floor.

Jack Jacobs testified on behalf of the defendant that he had been employed as a city building inspector in 1969. He viewed defendant's building on September 11, 1969, and found the third-floor balustrade of the 4750 unit to be in good repair. There were no missing balusters.

Edward Ciepiela, another city building inspector, testified on behalf of defendant that he inspected the building on July 22, 1969. He found no missing balusters at that time.

George Kamberos, defendant's son, testified on behalf of defendant that he was property manager of the building during the tenancy of plaintiff's family. None of them ever complained to him "that there were pickets or vertical supports missing on the third floor at 4750 North Pulaski, in that period before the child was injured."

Opinion

Defendant, defendant's son, Gaertner, the janitor, Officer Law and building inspectors Kozmer, Jacobs and Ciepiela were all questioned extensively by plaintiff regarding the existence of various building code violations in both the 4750 Pulaski unit and the 4001 Lawrence unit. These code violations included excess garbage, failure to have metal garbage containers or covers for refuse receptacles, unsightly rubbish

and debris at the rear of the building, peeling paint and plaster, loose boards, defects in the rear porch, the absence of hot water in the business premises on the first floor and the presence of rats and roaches.[1] Plaintiff also questioned these witnesses regarding the condition of balustrades in areas other than the third floor landing of the 4750 unit. In addition, plaintiff argued to the jury that up to and including the time of trial balusters could be found missing in the building. Defendant repeatedly objected to these questions and this line of argument. These objections were renewed in his post-trial motion, and he raises them once again as his primary contention on appeal. In essence, defendant argues that throughout the course of trial plaintiff engaged in a carefully orchestrated campaign to prejudice him before the jury through the introduction of evidence immaterial to any matter at issue in the case.

■■ Negligence at a particular time or place cannot be established by proof of similar acts of negligence at other times or places. (See *Harmon v. Peoria Ry. Co.*, 160 Ill. App. 458.) Thus, in the instant case evidence of conditions or defects existing in areas of defendant's building other than the third-floor landing and at times long after the occurrence in question was inadmissible to prove that on September 9, 1969, there were pickets missing in the balustrade through which it was alleged Tammy Altice fell. Plaintiff, however, argues that such evidence was admissible to (1) establish the fact that defendant had notice of the existence of defects within the building and of defendant's willful and wanton misconduct and (2) rebut testimony first elicited by defendant.

Proof that defendant had actual or constructive knowledge of the faulty balustrade was, of course, an element of plaintiff's case. Moreover, since willful and wanton misconduct was alleged, plaintiff was required to prove scienter on the part of defendant. *Martin v. Cline*, 15 Ill. App. 2d 269, 145 N.E.2d 505.

■■ Plaintiff relies most heavily on the case of *City of Taylorville v. Stafford*, 196 Ill. 288, 63 N.E. 624, to support the assertion that evidence of multiple defects in the building in areas other than the landing on the third floor could be used to establish these elements of her case. In *Stafford* a pedestrian brought an action against the city for injuries received when she tripped over a wooden stake driven in the ground to fill a hole in a plank sidewalk and which had worked up above the level of the walk. Over the objection of the city, the plaintiff introduced

---

[1] Although Building Inspector Jacobs reported a number of building code violations, he testified that the building did not appear to be exceptionally neglected.

evidence that, at the time of the accident, several other stakes in the same block, similarly used to repair the sidewalk, were above the level of the walk. The Supreme Court held that while such evidence "was not admissible to prove negligence on the part of the defendant" it was admissible on the question of whether the city had notice of the unsafe condition of the walk. It is plaintiff's position that this carefully circumscribed holding supports the introduction into evidence of such factors as building code violations in the garbage can storage area of defendant's apartment house weeks after the accident for the purpose of proving that he had knowledge of missing balusters on the third floor. We believe it clear that this is too broad an interpretation of *Stafford.* The Supreme Court's opinion cannot be used to justify the admission of evidence relating to areas of the building far removed from the scene of the accident at times long after the accident. It is our opinion that the evidence of this nature introduced in the case at bar was extremely inflammatory and simply not probative on the issue of notice of the existence of defects or scienter.[2]

Plaintiff also asserts that the class of evidence discussed above was admissible to rebut the testimony of defendant and other defense witnesses. She points approvingly to the statement of the trial court that:

"The only reason that I am permitting Mr. Arnold [plaintiff's counsel] to go into these matters [building code violations unrelated to the third-floor landing] is because I believe they are relevant to one issue: Whether the defendant knew or should have known of the existence of the alleged defect of pickets missing on the third floor.

And since that question is in issue, I believe that Mr. Arnold is entitled to test the credibility of various defense witnesses whose testimony seems to indicate that if the pickets were missing on September 9, 1969, that the defendant had no opportunity to know this.

---

[2] We note that plaintiff has also cited *Meiners v. Moyer,* 119 Ill. App. 2d 94, 255 N.E.2d 201, in support of this proposition. *Moyer* dealt with a factual situation strikingly similar to the one at bar, an action brought to recover damages for injuries incurred by a young child who fell through an opening in a balustrade of an apartment building in which his parents had leased an apartment. Plaintiff points out that in *Moyer* a notice to the defendant landlord stating that the building "had been condemned  *  *  * as unfit for human habitation" was admitted into evidence. However, there is no indication in that opinion that the defendant objected to the admission of the condemnation order nor was a contention raised on appeal asserting its admission as error. Moreover, evidence that the defendant leased apartments in a building declared unfit for human habitation may be seen as relevant on the issue of his alleged willful and wanton misconduct. In the instant case, while code violations were present in defendant's building, it had not been so condemned.

That is the only reason I am permitting Mr. Arnold to go into these matters.

\* \* \*

If the gentleman raises the issue of no notice, I suppose the plaintiff is entitled to present evidence to contradict the defendant's statement of no notice."

This ruling, plaintiff asserts, is supported by the principle that evidence which ordinarily would be excluded may be admissible to refute evidence previously given on the same topic. *Cf. Garshon v. Aaron,* 330 Ill. App. 540, 71 N.E.2d 799; *Ortiz v. Warren Chevrolet, Inc.,* 24 Ill. App. 3d 199, 321 N.E.2d 77.

Plaintiff points to the following testimony of three witnesses as opening the door to the introduction of such evidence.

(1) The testimony of defendant, called as an adverse witness, when questioned by plaintiff's counsel:

"Mr. Arnold: Nick, did you or somebody that you told, repair or replace any of the pickets on the third floor at 4750 after the baby had an accident?

Defendant: Yes. And before that, there was nothing. I didn't know, anything about them. Anything that happened they fixed it. And if it was broke, we fix it."

(2) The testimony of Officer Law responding to defendant's redirect examination:

"Mr. Schey [defense counsel]: Did you ask him [defendant's son] whether or not he had knowledge that the pickets were out on the third floor at 4750 North Pulaski Road?

The witness: I did.

Mr. Schey: What was his response?

The witness: He said the apartment was in, the building was in good shape; that it had recently been inspected. That is all he said."

(3) The direct testimony of defense witness Jack Jacobs, a city building inspector:

"Mr. Schey: Would you tell us the condition of the balustrade on the third floor of 4750 North Pulaski when you were there on September 11, 1969?

The witness: Well, to the best of my knowledge, everything was in good shape there. There were no balusters missing and everything seemed to be in good shape."

Defendant counters that evidence of building code violations in areas of the apartment house other than the third-floor landing, ostensibly

used by plaintiff to impeach the testimony of these witnesses, was collateral to any material issue and therefore was improperly admitted.

The recent case of *Herget National Bank v. Johnson,* 21 Ill. App. 3d 1024, 1028, 316 N.E.2d 191, contain a succinct statement of the rules regarding what constitutes impeachment on collateral grounds:

> "A witness may not be contradicted as to collateral, irrelevant or immaterial matters, and if a party brings out such matters on cross-examination, he may not contradict the witnesses' answers. (37 I.P.L. *Witnesses* §251 (1958); 58 Am. Jur. *Witnesses* §§782-784 (1948); 98 C.J.S. *Witnesses* §633 (1957); McCormick, Handbook on Evidence, §47 (2d ed. 1972); *Ray v. Cock Robin, Inc.,* 10 Ill. App. 3d 276, 286.) As to whether the matter is collateral within the rule the test is whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as part of his case or if it could be shown in evidence for any independent purpose. There are two classes of facts of which such evidence is admissible: (1) Facts relevant to some issue in the case under the pleadings; (2) facts admissible to discredit the witness as to interest, bias, motive, corruption, or the like. All matters not within these two classes are usually considered collateral."

■■ In the instant case, as we have held above, the evidence complained of was not relevant to any issue raised by the pleadings nor did it tend to discredit the witnesses as to their interest, bias or motives. We therefore hold that the court below erred in ruling that such evidence was admissible.

In view of the sharp conflict in the evidence on the issue of whether defendant had actual or constructive knowledge of missing balusters on the third-floor landing, we believe that the improper admission of evidence regarding unrelated building code violations must be deemed prejudicial error. Therefore we hold that the judgment be reversed and the cause remanded for a new trial. See *Herget National Bank.*

■■■ Since we are remanding the cause for a new trial, we will also discuss defendant's contention that the court erred in excluding evidence of plaintiff's alleged abandonment of her daughter. While cognizant that "there is a presumption of pecuniary loss in favor of the lineal heirs of the deceased in a wrongful death action from the relationship alone, and that the deceased's parents are such lineal next of kin," (*Ferraro v. Augustine,* 45 Ill. App. 2d 295, 302, 196 N.E.2d 16) he argues that the court should have allowed the admission of such evidence to allow him to rebut the presumption.

Defendant made an offer of proof in the form of the testimony of a

policeman and a policewoman that Eva Gardner, plaintiff's mother, had informed them that plaintiff desired to sell her child; that they posed as husband and wife and on July 5, 1968, plaintiff in fact "sold" them the child for the sum of $50; that plaintiff wrote out a receipt in the form of a guarantee that she did not want the baby back; that plaintiff was taken into custody, tried and convicted of violating section 5 of the Compensation for Placement Act (Ill. Rev. Stat. 1967, ch. 4, par. 12—5) and sentenced to a term of six months of which she served approximately 90 days. The record further indicates that the child was placed in a foster home for a time; that her physical condition evidenced some neglect; and that she was later placed in the custody of her grandmother, Mrs. Gardner, until such time as plaintiff would be able to support her. This information was not revealed to the jury. The court also would not allow defense counsel to question plaintiff regarding her employment status during the months immediately preceding the accident and the degree of support which she provided the child.

The court ruled:

> "* * * if you [defense counsel] have no evidence that at the time that Tammy Altice fell, which was September 9, 1969, I will reiterate, if you have no evidence at that time, no abandonment of the child by the plaintiff, I will not permit you to bring to the attention of the Jury, prior abandonment that had terminated prior to 1969."

Defendant has cited several cases as standing for the proposition that abandonment is conduct on the part of parents which demonstrates a settled purpose to forego all parental duties and to relinquish all parental claims to the child. (See *In re Adoption of Cech*, 8 Ill. App. 3d 642, 291 N.E.2d 21; *Robinson v. Neubauer*, 79 Ill. App. 2d 362, 223 N.E.2d 705; *Thorpe v. Thorpe*, 48 Ill. App. 2d 455, 198 N.E.2d 743.) These cases also indicate that where there is some element of interest shown in the child by the parent, there is no abandonment. Moreover, it is the general rule that an earlier abandonment which ceases and is not existent at the time of death may not be used to reduce damages. See Annot., 53 A.L.R. 3d 566, 583-584 (1973), "Parent's Desertion, Abandonment, of Failure to Support Minor Child as Affecting Right or Measure of Recovery for Wrongful Death of Child."

In the instant case, as defendant concedes, plaintiff lived in the same apartment as the child, undertook household chores such as cleaning and cooking, and had the responsibility of looking after her daughter as well as the children of her sister. We believe that these factors make clear there was no abandonment existent at the time of the accident. Therefore, it is our opinion that the court below ruled correctly in

712

preventing defendant from delving into the potentially inflammatory area of plaintiff's relationship with her child.

For the foregoing reasons we order that the judgment be reversed and the cause remanded for a new trial.

Reversed and remanded.

LORENZ, P. J., and SULLIVAN, J., concur.