(No. 56196.—

ALTHER LOCKETT, Adm'r, Appellant, v. BI-STATE
TRANSIT AUTHORITY *et al.*, Appellees.

*Opinion filed January 24, 1983.*

Jerome J. Schlichter and Jeanne Sathre, of Cohn, Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellant.

James McGlynn and John D. Wendler, of McGlynn & McGlynn, of Belleville, for appellees.

JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, as administrator of the estate of Constance Hilliard (decedent), instituted this wrongful death action in the circuit court of St. Clair County against defendant, Bi-State Transit Authority, after Constance Hilliard died of injuries sustained when she was struck by defendant's bus. Defendant's driver, Claude E. Leslie, was also originally named as a defendant, but plaintiff dismissed the cause of action as to him prior to the jury trial at which plaintiff obtained a $250,000 verdict. A divided appellate court reversed and remanded for a new trial (102 Ill. App. 3d 1210), stating that a question posed by plaintiff's counsel concerning defendant's termination of Claude Leslie's employment constituted a highly prejudicial violation of an *in limine* order. We subsequently granted plaintiff's petition for leave to appeal.

The accident which resulted in decedent's death occurred at approximately 5:30 p.m. on December 10, 1973, in the 1300 block of East Broadway in East St. Louis. Testimony at trial indicated that darkness had fallen, but that streetlights spaced along the north side of Broadway were lit; it was also undisputed that the headlamps and interior lights on defendant's bus were lit and that the weather was clear, dry and cool. The record additionally establishes that Broadway was a four-lane street in the 1300 block, but that parked cars occupied the two outermost lanes, leaving only two lanes for moving traffic. Marked pedestrian crosswalks were provided at each end of the block, with a third crosswalk located approximately in the middle. Because there was an elementary school located at the west end of the block, at the corner of 13th and Broadway, the speed limit in the area was 20 miles per hour when children were present. Claude Leslie, who had frequently driven that bus route, testified that children were often present at that time of day, and that he considered himself bound by the 20-mile-per-hour speed limit. The evidence also showed that the headlamps and part of the windshield on the right side of the bus were shattered in the accident.

Although some of the facts concerning the accident were undisputed, witnesses differed in their accounts as to the actions of Constance Hilliard, the location of the impact, and the speed of the bus. Willie Lockett, who was unrelated to plaintiff and unacquainted with Constance Hilliard, testified that he was seated in a car parked on the north side of Broadway while waiting for a friend to come out of a store on the south side of Broadway. The mid-block crosswalk was farther down the street to the west of that parked car. He stated that Constance Hilliard, accompanied by a man whom he did not know, emerged from a store on the south side of the street and walked a short distance to the mid-block pe-

destrian crosswalk. Upon reaching the crosswalk, the man with Constance Hilliard turned back and she began to walk across the street after looking both ways. At that point, Willie Lockett stated that he looked back over his shoulder and spotted defendant's bus approaching. He testified that the bus was traveling at about 35 miles per hour and that Constance Hilliard had nearly crossed the westbound lane when she was struck by the bus. In addition, he stated that the bus came to a stop 30 feet beyond the crosswalk.

Plaintiff also introduced the evidentiary deposition of Glennor Dabbs, a witness who had died prior to the trial. According to Mr. Dabbs, he had met Constance Hilliard as he was entering a shoeshine parlor on South 15th Street late in the afternoon on December 10, 1973, and acceded to her request to walk her partway home. They stopped briefly to warm up in a pool room and again in the Manhattan Club, located in the 1300 block of Broadway. Constance Hilliard lived in the Orr Weathers apartment complex across the street from the Manhattan Club, and when they left the club, Mr. Dabbs walked to the curbside with her. At that point, Mr. Dabbs spotted the bus approaching and said, "Here comes the bus." Although he was holding onto her coat lapel, she pulled away from him and went into the street, and he turned away. Mr. Dabbs further testified that there was no crosswalk at the point where she entered the street. Although he did not actually see her crossing the street, Mr. Dabbs also stated that she must have run in front of the bus, because it had been only 50 yards away when he first saw it, and he heard the impact of the accident only a "split second" after she had left him. After stating that the speed limit was evidently 20 miles per hour and that the bus was not speeding, Mr. Dabbs admitted that he did not actually know what the speed limit was. He also stated, however, that the bus came to a halt imme-

diately after the impact.

Claude Leslie, the bus driver, testified that he stopped at 14th Street to pick up Mrs. Hoffman and that he had only proceeded about 160 feet when the impact occurred. He declared that Mrs. Hilliard "come out of nowhere" and that he did not see her until she had already crossed in front of the bus to the extreme right side, about five inches from the bus. Mr. Leslie stated that the bus was traveling about 15 to 20 miles per hour when it struck her and that he was able to stop within a few inches after she was hit. When asked where the accident occurred in relation to the mid-block pedestrian crosswalk, Mr. Leslie indicated that the bus had not yet reached the crosswalk, which was 60 feet to the west. This response was supported by testimony from additional witnesses which indicated that the accident occurred before the bus reached the mid-block crosswalk.

Plaintiff's original complaint consisted of two counts, charging defendant with negligent misconduct and wilful and wanton misconduct. Following a period of discovery, plaintiff amended the complaint by adding two counts alleging that defendant was guilty of negligent entrustment and wilful and wanton entrustment, and paragraph 6(g) in count II, alleging that defendant was guilty of wilful and wanton misconduct because it allowed Claude Leslie to drive the bus despite its knowledge of his prior "reckless driving and unsafe practices." On defendant's motion, the trial court dismissed counts III and IV on the grounds that they failed to state a cause of action. Although the court denied plaintiff's motion for reconsideration, it did certify for interlocutory appeal the question as to whether count IV was properly dismissed, stating the issue as follows:

> "Whether Count IV of Plaintiff's Complaint, alleging in effect willful and wanton entrustment of defendant's vehicle to its driver states a cause of action in a situation in which defendant does not deny agency?"

Plaintiff's motion for an interlocutory appeal was denied by the appellate court.

Prior to trial, the court granted defendant's motion *in limine* in an order purporting to bar evidence concerning both Claude Leslie's company driving record prior to this accident, which was replete with instances of misconduct, and his employment history with defendant after the accident. While examining James Troupe, who was Claude Leslie's supervisor at the time of the accident, plaintiff's counsel asked when defendant terminated Mr. Leslie's employment. That question was objected to before the witness answered, and the trial court instructed the jury to disregard it. Having determined that the question constituted a nonprejudicial violation of his order *in limine*, the trial judge denied defendant's immediate motion for mistrial and also denied a post-trial motion for a new trial on that basis. It was this question which formed the basis for the appellate court's remandment. Because the trial took place before this court's decision in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, the court submitted two special interrogatories to the jury in order to determine if Constance Hilliard was guilty of contributory negligence and contributory wilful and wanton misconduct. The jury found her to be contributorily negligent but not guilty of contributory wilful and wanton misconduct, and found defendant guilty of wilful and wanton misconduct.

Plaintiff contends here that the trial court's *in limine* order was unjustified, and that, in any event, the limitations it purported to impose were too unclear to be enforceable. We agree on both counts.

The erroneous conclusion reached by the appellate court appears to stem from an overly broad application of the limitation adopted by our appellate court pertaining to the cause of action for negligent entrustment. (*Neff v. Davenport Packing Co.* (1971), 131 Ill. App. 2d 791.) Relying on *Neff* defendant argues that a cause of action for negligent

entrustment does not lie where existence of an agency relationship between tortfeasor and principal is not denied. *Neff*, a pre-*Alvis* case, is inapposite here. Prior to *Alvis v. Ribar* (1981), 85 Ill. 2d 1, recovery under a negligent-entrustment theory was necessarily premised on an initial finding of negligent conduct by the tortfeasor coupled with nonnegligent behavior on the part of the plaintiff. Because the defendant-principal was only charged with the negligence of the tortfeasor agent, the sole purpose of allowing the cause of action was to create a chain of liability. When the defendant-principal acknowledged his responsibility for the alleged negligence of the tortfeasor-agent, however, no reason existed to allow the plaintiff to introduce proof of the negligence of the defendant-principal in the form of potentially inflammatory evidence concerning the defendant's knowledge of prior misconduct on the part of the tortfeasor.

In cases involving wilful and wanton entrustment, however, the analysis necessarily differs from that of negligent entrustment. Unlike the situation in negligent-entrustment cases, where the misconduct of the defendant-principal is of the same level of culpability as that of the tortfeasor-agent, defendants-principals may be found guilty of wilful and wanton misconduct even though the tortfeasors-agents to whom the instrumentality causing the injury was entrusted may have been only negligent. Furthermore, while contributory negligence by the plaintiffs would, prior to *Alvis*, bar recovery in actions for negligent entrustment, it would not preclude recovery when the defendants were guilty of wilful and wanton misconduct. Consequently, the necessity of proof of the defendant-principal's misconduct in connection with wilful-and-wanton-entrustment actions is not eliminated simply because that party acknowledges an agency relationship with the tortfeasor.

Application of these principles to the case before us demonstrates the error we believe occurred. While counts

III and IV of plaintiff's complaint alleging negligent entrustment and wilful and wanton entrustment had been stricken on defendant's motion as failing to state a cause of action, paragraph 6(g) of count II remained at the time of trial. Even though differently phrased, its substance was identical to count IV in that it alleged defendant was guilty of wilful and wanton misconduct because it continued to employ Claude Leslie as a bus driver despite its knowledge of his poor driving record. If he, as the driver of the bus in this case, had been only negligent in striking the decedent, the jury might still have considered defendant to be guilty of wilful and wanton misconduct because it had continued to permit him to drive. Obviously, proof of that record carried the potential of prejudicing the jury against defendant. That proof, however, was highly relevant, if not essential, to plaintiff's case, and to preclude its use was, in practical effect, to abolish plaintiff's cause of action for wilful and wanton misconduct whether labeled as entrustment in count IV or as in paragraph 6(g) of count II. An *in limine* order excluding proof of the bad driving record until evidence had been introduced from which the jury could find the bus driver negligent would perhaps have been appropriate, and defendant might well have been entitled to an instruction cautioning the jury that proof of the driving record was not to be considered in determining the nature of the driver's conduct on this occasion. But to completely exclude proof of that record and all reference thereto was, in our opinion, impermissible.

Although we have not previously had occasion to address the propriety of actions for wilful and wanton entrustment, we approve of the recognition afforded that cause of action by our appellate court. (See, *e.g.*, *Giers v. Anten* (1978), 68 Ill. App. 3d 535; *Rosenberg v. Packerland Packing Co.* (1977), 55 Ill. App. 3d 959; *Dyreson v. Hughes* (1947), 333 Ill. App. 198. Accord, *Hinson v. Dawson* (1956), 244 N.C. 23, 92 S.E.2d 393. See also *Breeding v.*

*Massey* (8th Cir. 1967), 378 F.2d 171.) Because defendant's motion *in limine* operated to preclude plaintiff from introducing evidence necessary to sustain a valid and well-pleaded portion of her complaint, we consider the appellate court's reversal, which was premised on a violation of the improper order *in limine,* to be erroneous.

As earlier noted, plaintiff also urges that the limitations imposed by the *in limine* order were impermissibly vague. We emphasized in *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 550, that clarity and an accurate understanding by all parties were essential to the validity of *in limine* order. Neither of those requirements was met here. Defendant's oral motion for an *in limine* order followed an introductory statement, and was initially phrased as follows:

> "Therefore, I would move to prohibit the plaintiff from introducing any records pertaining to this man's [Claude Leslie's] driving, either before or after this event. And, limit the testimony to those facts which took place on the occasion when this woman was fatally injured."

During his response to plaintiff's argument in opposition to the motion defense counsel stated:

> "My motion is this. That the evidence and opening statements be restricted to that type of negligence or willfulness that occurred at the time and proximately caused the injuries and damages complained of. And that no other conduct unrelated to that type of conduct can become material."

After further comments, defendant's counsel then concluded by making the following request:

> "So I ask the court to limit in opening statement any reference to prior conduct of the defendant's driver or whatever became of this defendant's driver after this accident unless there is a showing of similar behavior on that occasion in question."

The court then allowed the motion, stating only, "As for this Motion In Limine, I will grant this motion."

As we said in *Reidelberger*:

> "The ability to restrict interrogation makes the *in limine* order a powerful weapon. This power, however, also makes it a potentially dangerous one. Before granting a motion *in limine*, courts must be certain that such action will not unduly restrict the opposing party's presentation of its case. Because of this danger, it is imperative that the *in limine* order be clear and that all parties concerned have an accurate understanding of its limitations." (83 Ill. 2d 545, 550.)

The oral motion, phrased differently each time, and the court's statement which simply granted "this motion" do not, in our judgment, meet the specificity requirements of *Reidelberger*. Rather, they leave quite unclear the extent to which reference to Claude Leslie's driving record was prohibited. In these circumstances the finding that the order was violated cannot serve as a basis for reversal.

Defendant also argues that the appellate court's reversal was proper because the trial court erroneously allowed plaintiff to introduce, as his second, third, and fourth exhibits, provisions excerpted from defendant's training manual. Defendant contends that these company rules did not reflect feasible conduct and were thus irrelevant and inadmissible under *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79. *Murphy*, however, is distinguishable. This court there held that a construction code incorporated into a city ordinance was improperly introduced because there was no evidence that the code was promulgated to eliminate existing hazards; it was thus irrelevant for the purpose of evaluating conduct engaged in prior to its promulgation. In contrast, defendant's rules, although typically phrased in the form of exhortations, were descriptive of and intended to eliminate existing hazards. They did not conclusively determine the standard of care and the jury was not instructed that they did. *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 113, 125, quoting *Darling v. Charleston Community Memorial Hospital* (1965),

33 Ill. 2d 326, 332. See 1 J. Dooley, Modern Tort Law sec. 3.29 (rev. ed. 1982). See also *Chicago City Ry. Co. v. Lowitz* (1905), 218 Ill. 24, 28.

Defendant additionally contends that these exhibits were prejudicial in that they were presented in a form similar to jury instructions. Their examination reveals, however, that they were plainly labeled as exhibits and that the source of each excerpt is prominently indicated. We do not agree that they can be fairly characterized as deceptive.

Nor do we agree that the jury's verdict was against the manifest weight of the evidence. There was evidence presented to the jury which, if believed, as it apparently was, would support the verdict.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court affirmed.

*Appellate court reversed;*
*circuit court affirmed.*