**BURLINGTON NORTHERN RAILROAD COMPANY, Plaintiff,**

v.

**JMC TRANSPORT, INC. and Ben Reed Bramble, Defendants.**

No. 81 C 4942.

United States District Court,
N.D. Illinois, E.D.

July 12, 1983.

**390**

John Newell, Chicago, Ill., for plaintiff.

C. Barry Montgomery, Edward J. Murphy, Jacobs, Williams & Montgomery, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Burlington Northern Railroad Company ("Burlington") initially sued JMC Transport, Inc. ("JMC") and Ben Reed Bramble ("Bramble"), alleging a Burlington locomotive and other equipment were damaged in July 1981 when struck at a crossing by a JMC truck negligently operated by Bramble. Some 18 months after Burlington filed its action, this Court granted JMC and Bramble leave to file Counterclaims alleging damages and personal injuries caused by Burlington's negligence at the time of the collision. Most recently this Court permitted defendants to amend their Counterclaims and their Answer, respectively, to add (1) claims for punitive damages and (2) an Affirmative Defense, in each instance based on Burlington's willful and wanton

misconduct in entrusting its locomotive to engineer Marion Miller ("Miller").[1]

Burlington has now moved (1) under Fed. R.Civ.P. ("Rule") 12(b)(6) to "strike" (really dismiss) defendants' Amended Counterclaims[2] and (2) under Rule 7[3] to strike the part of defendants' Affirmative Defense asserting Burlington's willful and wanton misconduct. In the alternative Burlington has moved under Rule 42(b) for separate trial of defendants' willful and wanton entrustment counterclaims. For the reasons stated in this memorandum opinion and order (1) Burlington's motion to dismiss (and for summary judgment on) the Amended Counterclaims is denied, (2) defendants' Affirmative Defense is stricken from their Amended Answer and (3) Burlington's motion for separate trial is conditionally granted.

### Amended Counterclaims

In their April 15, 1983[4] Motion To Amend Pleadings ¶¶ 2 and 4, defendants said (1) they did not become aware of Miller's prior disciplinary and safety record (the basis of their willful and wanton entrustment counterclaims) until April 5 and (2) they had been misled by Miller's prior deposition statement he had been involved in only one previous derailment, occurring some time in the late 1960s. On that latter point Burlington accurately responds (Motion To Strike Amended Counterclaim ¶ 2 and Exs. A(1) and (2)) Miller was asked at his deposition only about prior *crossing accidents*—and he responded correctly he had only one such accident, in the "Late 60's." But that simply means defendants are

---

1. Leave was also then granted to amend defendants' pleadings in lesser respects not relevant here.

2. Burlington's R.Mem. 3 claims its Rule 12(b)(6) motion "was addressed solely to the claims contained in the amended counterclaims," and presumably (*id.* at 2) "not [to] matters outside the pleading[s]." As will become evident, however, Burlington's entire argument on its Rule 12(b)(6) motion depends on its reference to facts revealed by Miller's deposition and in his personnel record. Under the final sentence of Rule 12(b)(6) that action converted Burlington's motion into one for summa-

ry judgment under Rule 56. That was a dangerous (and probably unintended) result, for summary judgment for *defendants* thereby became possible. *See* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2720, at 29–30 (1983). But though Burlington thus switched to the wrong procedural track, disaster was averted by the material factual disputes revealed in the text.

3. Did Burlington mean Rule 12(f)?

4. All subsequent dates without year designations were also in 1983.

wrong in claiming Miller misled them. It does not also defeat, as a matter of law, defendants' willful and wanton entrustment counterclaims.

Miller's personnel record (Ans. Mem. Ex. A) reveals four disciplinary actions:[5]

1. December 2, 1964: "Censured for disregard of safety . . . and joint responsibility [as fireman] for accident by failure to keep a constant lookout [for track alignment] . . . resulting in running through . . . switch and derailing engines when reverse movement was made."

2. August 28, 1975: "Suspended . . . for period of 10 days . . . for disregard of safety . . . by failure to sound the proper whistle signal when stopped at . . . automatic interlocking . . . [and] to provide flag protection for his train, while assigned as engineer."

3. June 6, 1977: "Suspended . . . for five (5) days . . . for disregard of safety . . . by failure to determine whether flat spots on wheels of Engine . . . in his charge were more than or less than two inches in length and failure to notify dispatcher and be governed by his instructions."

4. July 3, 1980: "[D]ismissed . . . for disregard of safety . . . [by] failure to comply with bulletins and special instructions, resulting in derailment of nine cars . . . with resultant damage to track & equipment, and failure to operate train in compliance with speed restrictions when assigned as engineer."[6]

Defendants contend (Ans.Mem. 2–4) they need not refer to that record to survive a motion to dismiss, because their Amended Counterclaims state an Illinois cause of action for willful and wanton entrustment.[7]

Playing it safe, however, and sensing Burlington's conversion of its motion to one for summary judgment, defendants also (*id.* at 4–7) cite matters outside the pleadings to show (1) they have a cause of action and (2) factual issues preclude summary judgment for Burlington. Defendants are right on both points.

Earlier this year the Illinois Supreme Court recognized the cause of action for willful and wanton entrustment, *Lockett v. Bi-State Transit Authority,* 94 Ill.2d 66, 74, 67 Ill.Dec. 830, 834, 445 N.E.2d 310, 314 (1983). It also specifically approved Illinois Appellate Courts' earlier recognition of that action, citing *Giers v. Anten,* 68 Ill.App.3d 535, 24 Ill.Dec. 878, 386 N.E.2d 82 (1st Dist. 1978); *Rosenberg v. Packerland Packing Co.,* 55 Ill.App.3d 959, 13 Ill.Dec. 208, 370 N.E.2d 1235 (1st Dist.1977); and *Dyreson v. Hughes,* 333 Ill.App. 198, 76 N.E.2d 809 (2d Dist.1947). Even the most cursory comparison of the Amended Counterclaims with the substantive pleading standards discussed in *Giers,* 68 Ill.App.3d at 539–40, 24 Ill.Dec. at 881–882, 386 N.E.2d at 85–86 shows defendants have properly pleaded a willful and wanton entrustment claim.[8]

Moreover *Giers,* 68 Ill.App.3d at 540, 24 Ill.Dec. at 882, 386 N.E.2d at 86 labels as "questions of fact" (1) whether a tortfeasor was reckless or incompetent and (2) whether an "entruster" was guilty of willful and wanton misconduct. Burlington thus misses the mark in arguing (Motion ¶ 3; R.Mem. 2–4) that the fact Miller had only a single, and much earlier, *crossing* accident (one leading to no disciplinary action) establishes *as a matter of law* defendants cannot prove Burlington's willful and wanton entrustment. Miller's admission of

---

**5.** Evidently Miller's "Late 60's" crossing accident did not lead to disciplinary action. See also Motion To Strike Amended Counterclaim ¶ 3.

**6.** Miller was reinstated October 3, 1980 "Solely as a matter of managerial leniency . . . ." Ans. Mem. Ex. A.

**7.** As dictated by *Erie v. Tompkins* principles, Illinois law provides the substantive rules of decision applicable to this diversity action.

**8.** True, defendants have not explicitly pleaded Miller was a reckless or incompetent engineer. *See Giers,* 68 Ill.App.3d at 539, 12 Ill.Dec. at 881, 386 N.E.2d at 85. But that allegation is clearly adumbrated by specific recitations as to Miller's past safety infractions. Indeed the test of pleading adequacy is really federal not state, and the Amended Counterclaim a fortiori meets the liberal notice pleading standards of Rule 8.

that prior crossing accident [9] and his other disciplinary record raise factual questions for the jury and preclude summary judgment for *either* party.

### Amended Answer

Neither party has cited, nor has this Court found, any Illinois law as to whether willful and wanton misconduct may be set up as an affirmative defense to a negligence tort under a comparative negligence regime. Only two years have elapsed since the Illinois Supreme Court adopted "pure" comparative negligence in *Alvis v. Ribar,* 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981), too recently to have generated case law on point.

This Court must perforce look to indications in the governing Illinois law and in the law of other states relied on in *Alvis.* Those sources, however, allow a confident prediction Illinois courts would now find it unnecessary for a negligence action defendant to plead an affirmative defense of willful and wanton misconduct. Moreover as a matter of federal pleading this Court finds an allegation of a plaintiff's willful and wanton misconduct no longer constitutes an "affirmative defense" within the meaning of Rule 8(c) in an action to which Illinois substantive law applies.

In *Lockett,* 94 Ill.2d at 73, 67 Ill.Dec. at 834, 445 N.E.2d at 314, the Illinois Supreme Court noted:

> Furthermore, while contributory negligence by the plaintiffs would, prior to *Alvis,* bar recovery in actions for negligent entrustment, it would not preclude recovery when the defendants were guilty of wilful and wanton misconduct.

Under pre-*Alvis* law, then, a claimant alleging negligence would also want to plead the opponent's willful and wanton misconduct, to avoid the risk that a finding of the claimant's own contributory negligence would bar recovery. But the obvious corollary is that willful and wanton misconduct no longer plays an independent jurisprudential role when the contributory negligence doctrine is abandoned. That is precisely the conclusion reached under the law of California—a jurisdiction substantially relied on in *Alvis,* 85 Ill.2d at 17, 52 Ill.Dec. at 30, 421 N.E.2d at 893. *See Plyer v. Wheaton Van Lines,* 640 F.2d 1091, 1093 (9th Cir.1981).

Indeed *Alvis* itself indicates there is similarly no *need* for a willful and wanton misconduct defense when "pure" comparative negligence reigns (85 Ill.2d at 25–26, 52 Ill.Dec. at 34, 421 N.E.2d at 897):

> The liability of a defendant should not depend upon what damages he sustained but should be determined by the relationship of his fault to the ultimate damages. In a suit under a "pure" form of comparative negligence in which the defendant counterclaims for his own damages, each party must bear the burden of the percentage of damages of all parties in direct proportion to his fault. In the example above, the 90% negligent plaintiff will bear 90% of his own damages as well as 90% of defendant's. On the other hand, the 10% negligent defendant will be made to bear 10% of his own damages as well as 10% of plaintiff's. Neither party is unjustly enriched. Neither party escapes liability resulting from his negligent acts or omissions.

Obviously such apportionment of fault on a percentage basis allows allocation of damages between negligence claimants and counterclaimants without "defensive" reference to either's alleged willful and wanton misconduct.

After *Alvis* a "defensive" allegation of willful and wanton misconduct is thus simply an assertion of allocable fault on plaintiff's part—one added to the similar assertion in the allegation plaintiff's own negligence caused its injuries. In the present willful and wanton entrustment case context, the latter allegation would contend

---

**9.** *Giers,* 68 Ill.App.3d at 540, 24 Ill.Dec. at 882, 386 N.E.2d at 86 specifically rejected the notion a three-year period between the driver's past negligence and the entrustment at issue barred a finding of negligent or willful and wanton entrustment. Similarly the time lag between Miller's "Late 60's" crossing accident (and between his much later safety violations that led to disciplinary action) and July 1981 is a factor for the jury's consideration.

the agent was at fault at the time of the accident (that fault being attributed to his principal), and the former would contend another element of the principal-entruster's fault was its own aggravated misconduct.[10]

■ That analysis further suggests willful and wanton misconduct is really not an "affirmative defense" for federal pleading purposes under post-*Alvis* Illinois law. Affirmative defenses generally admit the matters in a complaint but nevertheless assert facts that would *defeat* recovery. *See Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736 (N.D.Ill.1982) and authorities cited there. That is why Rule 8(c) lists "contributory negligence" as an affirmative defense: Rule 8(c) reflects the older law under which plaintiff's negligence meant plaintiff lost the case. Under the post-*Alvis* regime, however, *neither* plaintiff's negligence nor an entruster's misconduct would *bar* recovery—both would simply enter into the calculus of fault. That substantive change in governing Illinois law thus mandates corresponding changes in how federal litigants plead contributory negligence and other elements of a claimant's own fault. Accordingly this Court strikes defendants' Affirmative Defense in its entirety.[11]

### Separate Trials

■ *Lockett* acknowledges a willful and wanton entrustment claim may prejudice the accused, 94 Ill.2d at 74, 67 Ill.Dec. at 835, 445 N.E.2d at 314. It then indicates, *id.,* the potential prejudice might be contained by:

1. excluding evidence about the prior safety record until enough other evidence has been introduced to permit a jury finding of negligence and

2. granting the accused a cautionary jury instruction distinguishing the prior safety record issue from the question of the tortfeasor's conduct that caused the accident sued upon.

Burlington is very worried (R.Mem. 6–10) about the prejudice it risks and the practical problems it faces in a joint trial of its claims and defendants' counterclaims. Burlington's practical concerns about preparation of its defense are not really persuasive: It will have to prepare its defense in any event and, contrary to its assumption, a separate "second" trial of defendants' counterclaims need not be far removed in time from a trial of Burlington's own claims.[12] Burlington's fears as to prejudicing the jury are more legitimate, because it is readily apparent Miller's past record might improperly weave itself into the jury's consideration of his conduct in the JMC-Burlington crossing accident.

Defendants posit (Ans.Mem. 9–12) a possible violation of their Seventh Amendment rights should separate *juries* be empanelled to try Burlington's claim and their counterclaims. They invoke *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931) to argue the claim and counterclaims are "interwoven" and not "so distinct and separa-

---

**10.** Where the negligence defendant suffered damages himself he might then translate his defensive assertions into counterclaims for compensatory damages for plaintiff's negligence and punitive damages for the entruster's willful and wanton entrustment. Defendants have done that here.

**11.** Neither party will be prejudiced by elimination from the Amended Answer of the defensive allegation as to Burlington's willful and wanton entrustment:

(1) Because the pleadings themselves will not go to the jury there is no prejudice to defendants from such omission. *Evidence* raising that issue will of course be presented to the jury.

(2) Burlington will suffer no prejudice because:

(a) For notice pleading purposes under Rule 8, Burlington has been apprised by defendants' counterclaims that its entrustment will be at issue.

(b) As the next section indicates, the aggravated misconduct elements of defendants' defense and counterclaims will be separated out for trial purposes.

**12.** To the extent Burlington shows a legitimate need for time to prepare its defense to defendants' new counterclaims, it may move for extensions of relevant deadlines and cut-off dates.

ble" as to allow separate trials under the rule announced there.

But this Court need not face the complex question of how Burlington's claim and defendants' counterclaims are "interwoven" or "separate." Instead Burlington's fears can be assuaged without empanelling separate juries, thus obviating defendants' constitutional concerns:

1. First the jury will try Burlington's claim and defendants' defense and counterclaims based on Miller's negligence. It will be requested by special interrogatories to allocate fault between the parties on those claims.

2. If Burlington has been found negligent in any degree (due to Miller's negligence), that same jury will then hear the evidence on defendants' willful and wanton entrustment contentions (both defensively and offensively). It will then (1) reallocate fault between the parties in light of its findings on defendants' entrustment counterclaims, assessing compensatory damages accordingly, and (2) assess punitive damages, if any.

That procedure will assure an "untainted" jury for trial of Burlington's claim and an informed jury for possible trial of defendants' willful and wanton misconduct claims. It also avoids defendants' *Gasoline Products* concerns. And it is certainly within this Court's broad discretion under Rule 42(b). *See* 9 Wright & Miller § 2391, at 302 (1971).

### Conclusion

Burlington's motion to dismiss (and for summary judgment on) defendants' Amended Counterclaims is denied. Defendants' Affirmative Defense in their Amended Answer is stricken. Burlington's motion for separate trial of defendants' willful and wanton entrustment counterclaims is granted, to be held:

1. following the trial of Burlington's claim and defendants' defense and counterclaims based on Miller's negligence (but only if that trial results in a finding of such negligence); and

2. before the same jury that heard the first issues.