**Karen A. CRAWFORD, Plaintiff,**

v.

**YELLOW CAB COMPANY, a foreign corporation, Defendant.**

**No. 81 C 2018.**

United States District Court, N.D. Illinois, E.D.

Oct. 17, 1983.

Theodore J. Theophilos, Sidley & Austin, Chicago, Ill., for plaintiff.

Chester L. Harris, Jesmer & Harris, Peter J. Valeta, Edwin A. Rothschild, David C. Jacobson, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendant.

## MEMORANDUM

LEIGHTON, District Judge.

This is a diversity civil action for personal injuries allegedly sustained by the plaintiff Karen Crawford when she was a passenger in a taxicab that collided with another in the City of Chicago. She seeks compensatory and punitive damages for the alleged reckless conduct of defendant Yellow Cab Company's driver, its ratification of this conduct, and the alleged willful and wanton entrustment of a taxicab to the driver.

The cause is before the Court on plaintiff's motion *in limine* by which a summary of the driving records of 4,400 past and present Yellow Cab drivers will be admitted in evidence. The motion, one in a long line of hotly contested pretrial and discovery disputes, has been carefully considered by the Court; and having reviewed the parties' submissions and the relevant law, it concludes that the summary sought to be introduced is inadmissible. Therefore, the motion *in limine* is, accordingly, denied.

## I

On May 20, 1980, plaintiff Karen Crawford, a promotions director for Bill Communications of New York City, was in Chicago attending a business banquet at the Conrad Hilton Hotel on Michigan Avenue. After dinner at approximately midnight, Ms. Crawford and two business associates hailed a Checker taxicab in front of the hotel and instructed the driver to take them to a nightclub on Rush Street. As the cab proceeded north on Michigan Avenue, the traffic became very congested because the avenue draw bridge was raised. When it was finally lowered, the bumper-to-bumper traffic began to move very slowly. As the taxicab moved across the bridge, it was rear-ended by a Yellow Cab driven by Michael Slein. Plaintiff claims that she suffered injuries to her neck and back as a result of this collision.

After the accident, plaintiff was taken to her hotel room for the evening. The next day she and her business associates filed an accident report with the Chicago Police Department. Then, approximately thirty-six hours after the accident, she sought medical treatment at Presbyterian Medical Center in Chicago. When she was seen by Dr. Hark there, plaintiff complained of a burning sensation in her neck and back. Dr. Hark examined her for about one-half hour, but no x-rays were taken. Once the examination was completed, the doctor prescribed a foam rubber cervical collar and some medication. In her deposition testimony, plaintiff stated that she wore the collar regularly, except while sleeping and bathing, for approximately one month. She then wore it sporadically for another three months.

Plaintiff returned to New Jersey shortly after visiting Dr. Hark. Approximately one week after the accident, on May 28, 1980, she visited Dr. Paul O'Connor who examined her and had x-rays taken of her back and neck. Although the x-rays revealed that no fractures or dislocations were evident, Dr. O'Connor prescribed some medication and advised Ms. Crawford to continue wearing the cervical collar. Plaintiff visited Dr. O'Connor three times between May 28 and June 30, 1980. Still experiencing discomfort, she visited Dr. Esin Kaplan, M.D., a physiotherapist with the Rush Institute in New York City, in October 1980. On Dr. Kaplan's recommendation, she underwent thirteen weeks of physical therapy, once or twice a week, at the New Jersey Rehabilitation Center in Little Falls, New Jersey. These visits included treatments of wet and dry heat to the neck, back and left shoulder. On March 1, 1981, plaintiff visited yet another doctor—an osteopathic physician, Dr. Marvin H. Soalt of Bloomfield, New Jersey. Dr. Soalt examined her and prescribed a course of therapy but no medication.

Plaintiff claims that she has incurred expenses slightly in excess of $900.00 as a result of the taxicab accident. This figure includes the cost and expense of the numerous doctor visits, x-rays, medication, cervical collar, and other aids for comfort and treatment. She sues to recover $50,000 in compensation for her loss and injuries; and $200,000 punitive damages.

## II

Plaintiff seeks to recover less than $1,000.00 in "out-of-pocket" losses. In light of this relatively small amount, the gist of this tort action is her claim for punitive damages; one that is based on the defendant's entrustment of a taxicab to an allegedly unfit driver, Michael Slein. Illinois law governs the rights of the parties in this diversity case.

The propriety of an action for the wrongful entrustment of a motor vehicle has frequently been approved by Illinois courts. *See e.g., Lockett v. Bi-State Transit Authority,* 94 Ill.2d 66, 67 Ill.Dec. 830, 445 N.E.2d 310 (1983); *Murphy v. Urso,* 88 Ill.2d 444, 58 Ill.Dec. 828, 430 N.E.2d 1079 (1982); *Rosenberg v. Packerland Packing Co.,* 55 Ill.App.3d 959, 13 Ill.Dec. 208, 370 N.E.2d 1235 (1977); *Bensman v. Reed,* 299 Ill.App. 531, 20 N.E.2d 910 (1939). In such cases, punitive damages may be awarded if the entrustment constitutes wilful and wanton misconduct. *Lockett v. Bi-State Tran-*

*sit Authority; Giers v. Anten,* 68 Ill.App.3d 535, 24 Ill.Dec. 878, 386 N.E.2d 82 (1978); *Rosenberg v. Packerland Packing Co.* The Illinois Supreme Court has defined wilful and wanton misconduct as that which is committed with an intentional or reckless disregard for the safety of others. *Klatt v. Commonwealth Edison Co.,* 33 Ill.2d 481, 211 N.E.2d 720 (1965). Whether a particular act constitutes wilful and wanton misconduct depends on the facts of each case and is a question of fact for the jury to determine. *Giers v. Anten; Kelly v. Burtner,* 310 Ill.App. 251, 33 N.E.2d 754 (1941).

■ In an effort to prove that defendant entrusted its cab to its driver with intentional disregard for the safety of others, plaintiff seeks to introduce into evidence a summary of the driving records of 4,400 other past and present Yellow Cab drivers. This compilation includes statistics of accidents and traffic law violations which occurred before and up to two years after the collision in this case. Plaintiff contends that the summary is relevant and admissible under Rule 404(b) of the Federal Rules of Evidence, which states:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

■ Although certain circumstantial use of character evidence is relevant under this exception, a determination must be made, prior to admission, whether the danger of undue prejudice outweighs its probative value. Fed.R.Evid. 404(b) Advisory Committee Note. Rule 404(b) explicitly excludes the use of character evidence when it is offered to show that a defendant has acted in conformity therewith. In this case, the evidence is being offered under Rule 404(b) to show that the Yellow Cab Company has a reputation for being negligent in the entrustment of vehicles to drivers and had acted in conformity with that reputa-

tion in leasing a cab to Slein. Similarly, under Illinois law, negligence at a particular time or place cannot be established by evidence of similar but disconnected acts of negligence at other times or places, or by defendant's general reputation for carelessness. *Ward v. Kamberos,* 36 Ill.App.3d 703, 344 N.E.2d 691 (1976); *Harmon v. Peoria R. Co.,* 160 Ill.App. 458 (1912).

In the case at bar, plaintiff contends that the summary is offered to prove defendant cab company's intent under Rule 404(b). Her memorandum in support of the motion in limine, however, suggests otherwise:

> An essential element of the Plaintiff's cause of action is that Yellow Cab Company's entrustment of its taxicab to Mr. Slein was a wilful and wanton act consistent with its corporate practice and policy of indifference to the duty to safely entrust vehicles. Plaintiff seeks to offer proof at trial of Defendant's practice and pattern of entrustment of taxicabs to unfit drivers.

Plaintiff claims that an essential element in proving her claim for punitive damages is that Yellow Cab's entrustment of a taxi to Michael Slein was consistent with its corporate practice and policy of indifference to the duty to safely entrust vehicles. However, the similar but disconnected instances of misconduct cannot be used to establish that Yellow Cab acted with reckless disregard in the instant case. As noted earlier, evidence of other wrongful acts is inadmissible if offered to prove the character of a defendant in order to show that he acted in conformity therewith.

■ Plaintiff insists that the summary is relevant under Rule 404(b) because it is offered to demonstrate defendant's "intentional" disregard for the safety of others. In support of her argument, plaintiff cites several criminal cases. Undoubtedly, she is correct that the Court of Appeals for the Seventh Circuit has repeatedly ruled that evidence of other acts in criminal cases is admissible to prove a defendant's intent or state of mind on a particular occasion. *United States v. Lea,* 618 F.2d 426 (7th Cir.1980); *United States v. McPartlin,* 595

F.2d 1321 (7th Cir.1979); *United States v. Feinberg,* 535 F.2d 1004 (7th Cir.1976), *cert. denied* 429 U.S. 929, 97 S.Ct. 337, 50 L.Ed.2d 300 (1976). Plaintiff is incorrect, however, in assuming that the rationale for admission in criminal cases supports admission of such evidence in civil cases:

> Character evidence is considered irrelevant as circumstantial proof of conduct [in civil cases], a judgment which represents a great departure from the view taken in criminal cases. The distinction seems to rest upon the premise that the conduct typically in issue in civil cases represents much less a departure from an accepted 'norm' than does conduct typically in issue in criminal cases, hence that between the criminal and civil spheres the probative worth of character evidence decreases to a point below the minimal standard of relevancy set by Rule 401.

2 Louisell & Mueller, Federal Evidence, § 142 at 151 (1978).

There is a significant difference between using character evidence to show a specific criminal intent in a specific instance and using it to demonstrate an alleged generalized corporate pattern or practice. The cases cited by plaintiff are distinguishable and do not, in this court's view, support admittance of the summary as evidence of defendant's "intent". The court concludes that the summary plaintiff seeks to use to demonstrate that defendant's past record or reputation with respect to entrusting cars to poor drivers, and to show that defendant's actions with respect to Slein were in conformity with its past record, is inadmissible for such a purpose under 404(b) of the Federal Rules of Evidence. Accordingly, the motion *in limine* must be denied.

The court must comment on how plaintiff, through her counsel, has escalated a simple "fender-bender" accident into a hotly contested litigious dispute in which attorneys for both sides have spent numerous hours on needless discovery. For example, plaintiff has compelled defendant to produce the driving records of 4,400 past and present employees of the Yellow Cab Company. These documents include the traffic law violations and accident records of defendant's employees other than Slein, for the two year period subsequent to the minor accident in this case. The court finds it difficult to understand the possible relevance to plaintiff's claim of records of employees other than Slein, for a two year period after the accident in question. One important purpose of pre-trial discovery is to clarify and narrow the issues of a case; not, as plaintiff and her lawyers are attempting to do, confuse and expand a simple "fender bender" personal injury action into this protracted litigation.

The court's ruling with respect to the proffered summary does not prevent plaintiff from presenting evidence in support of her claim for punitive damages. Evidence of Slein's prior driving record and employment history with the defendant is, of course, admissible.

Under the Federal Rules of Evidence, character evidence is relevant when a party's character is an element of a charge, claim, or defense. Fed.R.Evid. 404, 405. Simply stated:

> Character questions arise in two different ways in litigation. It may be an element of a crime, or of a claim, or of a defense. When this occurs, the courts say that characters is 'in issue.' An example is the competency of a driver in an action for negligently entrusting a motor vehicle to an incompetent driver. In such cases, it is clear that character evidence is relevant. In fact, in such cases it is more than relevant, because it is probably essential to prove the crime, claim, or defense. These cases are not covered by Rule 404. While not explicitly excluded, they are implicitly excluded by the definition of 'purpose' of offering evidence . . .

Saltzburg, *Federal Rules of Evidence Manual,* 129 (2d ed. 1977). When character evidence is offered in cases where character is in issue, its use is not circumstantial; therefore, it avoids the problems raised under Rule 404(b). Similarly, Rule 405(b) provides:

> (b) Specific instances of conduct. In cases in which character or trait of char-

8

**1210**

acter of a person is an essential element of a charge, claim, or defense, proof may be made of specific instances of conduct. Fed.R.Evid. 405(b). Additionally, the Illinois Supreme Court recently held that the entrustee's driving record prior to the accident is relevant and admissible in an entrustment action. *Lockett v. Bi-State Transit Authority,* 94 Ill.2d 66, 67 Ill.Dec. 830, 445 N.E.2d 310 (1983). The Court stated:

> Obviously, proof of [an entrustee's driving] record carried the potential of prejudicing the jury against the defendant. That proof, however, was highly relevant, if not essential to plaintiff's case and to preclude its use was, in practical effect, to abolish plaintiff's cause of action for wilful and wanton misconduct . . .

94 Ill.2d at 74, 67 Ill.Dec. at 834, 445 N.E.2d at 314.

Accordingly, evidence of Michael Slein's driving record is relevant and admissible in this case. To substantiate her claim for wilful and wanton entrustment, plaintiff must prove that Slein is an incompetent driver. Since Slein's character is in issue, evidence which would reflect on his competency as a driver would be admissible under the Federal Rules of Evidence, and under Illinois law.

Plaintiff also alleges that defendant is guilty of willful and wanton misconduct because it continued to employ Slein despite its knowledge of his poor driving record. *See,* Plaintiff's Reply Memorandum in Support of Her Motion In Limine at p. 3. In order to substantiate such a claim, plaintiff must demonstrate that the Yellow Cab Company did in fact know of Michael Slein's poor driving record. As noted earlier, character evidence may be admitted if it is offered to demonstrate defendant's knowledge of a particular fact or circumstance. Fed.R.Evid. 404(b). Where character is an essential element of a charge, claim or defense, proof may be made of specific instances of conduct. Fed.R.Evid. 405(b). Furthermore, the Illinois Supreme Court held in *Lockett* that evidence of the entrustee's employment history is admissi-

ble in a wrongful entrustment action. *Lockett v. Bi-State Transit Authority,* 94 Ill.2d at 74, 67 Ill.Dec. at 834, 445 N.E.2d at 314. Consequently, evidence of Michael Slein's employment record with the Yellow Cab Company is also admissible in the instant case.

For these reasons, the plaintiff's motion *in limine* is denied; the proffered summary is inadmissible under the Federal Rules of Evidence. However, plaintiff may offer proof of Michael Slein's driving record and employment history with the Yellow Cab Company in order to substantiate her claim for punitive damages.