JOAN MUELLER, Plaintiff and Counterdefendant-Appellee, *v.* YELLOW CAB COMPANY, Defendant and Counterplaintiff-Appellant.

First District (4th Division)   No. 81—2592

Opinion filed November 12, 1982.

Jesmer and Harris, of Chicago (Ronald Jay Gold and Charles E. Tannen, of counsel), for appellant.

Robert A. Townsend, of Chicago, for appellee.

JUSTICE ROMITI delivered the opinion of the court:

Defendant appeals from an adverse jury verdict and judgment in a suit for personal injuries and property damage. Defendant contends:

(1) the trial court erred in refusing to allow defendant to impeach its own witness when the witness, to defendant's surprise, testified contrary to a previous written statement;

(2) the trial court erred in refusing to allow expert testimony from an employee of the city of Chicago Department of Streets and Sanitation as to timing, sequence and location of certain traffic signals;

(3) the trial court erred in instructing the jury as to future pain and suffering where injuries, if any, were purely subjective in character and the only evidence as to future pain and suffering was plaintiff's testimony that at the time of trial, five years after the occurrence, she still suffered some headaches; and

(4) the trial court erred in directing a verdict as to the amount of property damage where the only evidence was an estimate of repairs and the sole witness on this issue, plaintiff's husband, had no personal knowledge as to the extent of damage.

We agree with defendant that the trial court committed reversible

error in refusing to permit it to impeach its witness. We also agree that the court should have allowed the expert testimony. Finally, we agree that the trial court erred in directing a verdict as to the amount of property damage.

The accident occurred when defendant's taxicab ran into plaintiff's automobile at an intersection. Both sides contended the other went through a red light. There were four witnesses on this issue: the plaintiff; Roy Pomeraning, an acquaintance of plaintiff who was in a milk truck standing at the intersection; the taxicab driver, James Flores; and Ronald Marshall, the passenger in the taxicab.

Plaintiff testified that the accident occurred at the intersection of the exit ramp from the Kennedy Expressway and Montrose Avenue at 8:45 a.m. while she was driving to work. Plaintiff left the expressway at the Montrose exit, intending to turn from the exit ramp onto westbound Montrose Avenue. The intersection is controlled by a traffic light. Plaintiff could see the traffic light immediately upon her exit from the expressway onto the ramp. As she drove up the exit ramp, the light was green. She reduced her speed from 55 m.p.h. to about 15 or 20 m.p.h. There were no vehicles in front of her. As she entered the intersection the traffic light was still green. She passed a milk truck sitting in the south lane on Montrose facing east. As the front of her vehicle was passing the milk truck, she saw a taxicab approximately 10 to 15 feet from her moving east on Montrose in the second lane from the south curb. The cab struck the left side of her car. According to plaintiff, the cabdriver stated he did not see the traffic light.

Roy Pomeraning was the driver of a milk truck. He and the plaintiff had known each other on a first-name basis for four or five years. He testified that at the time of the accident he was in the far right lane on Montrose waiting for the light to change. He had been stopped there for about one minute. When plaintiff crossed in front of him, his light was still red. The witness did not see defendant's taxi but he heard it strike plaintiff's car.

James Flores, the taxicab driver, testified that before the accident he had been driving east along Montrose for several blocks. He first saw the traffic lights about half a block away. The lights were in view when one was under the viaduct, which was west of the intersection, and when one was east of the viaduct. When he first saw the lights they were red. He was traveling about 25 m.p.h., but he decreased his speed as he continued east. When he was four or five car lengths west of the intersection, the light changed to green. He continued into the intersection and the accident occurred. Flores denied he ever

stated to plaintiff that he ran the red light.

Defendant also called Ronald Marshall, the passenger in the cab, as a witness. Contrary to a previously given written statement, Marshall testified that he did not see the light. Defendant's attempts to examine him as to the previously given statement were objected to and the objection was sustained on the ground defendant was attempting to impeach its own witness. Defendant's request for a side-bar was denied.

On cross-examination, Marshall testified that he did not know what color the traffic light was because he had been talking with the cabdriver at the time of the accident. He said that at the time of the accident the driver had his head turned towards the rear seat.

After this witness' testimony the court recessed for lunch. Immediately after lunch, defendant moved for a mistrial because it had not been allowed to impeach Marshall with his prior signed statement. In that statement, he had said, "When we approached the Kennedy exit ramp the light was green for the cab and as the driver proceed [*sic*] a car driven by Joan Mueller who was northwest bound off [the] exit ramp ran the red light directly in front of the taxicab. My driver could do nothing but hit her in her left side. I know the light for east-bound Montrose was green as I am an amature [*sic*] camera buff and am always looking for a photos [*sic*]."

■ Defendant, relying on Supreme Court Rule 238, contended that it was entitled to impeach the witness because it was taken by surprise by the inconsistent statement. The trial court denied the claim on the grounds defendant had been trying to impeach his witness, not rehabilitate him, and there was no showing of hostility.

Supreme Court Rule 238 provides:

> "If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination. The party calling an occurrence witness, upon the showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements." (73 Ill. 2d R. 238.)

It seems clear that under this rule a party need only show surprise and need not show hostility. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 419 N.E.2d 578; *Sellers v. Hendrickson* (1977), 46 Ill. App. 3d 549, 360 N.E.2d 1235; *O'Boyle v. Greco Excavating Co.* (1972), 9 Ill. App. 3d 234, 292 N.E.2d 90, *appeal denied* (1973), 53 Ill. 2d 608.) Thus we believe the trial court erred in refusing to allow defendant to impeach Marshall.

■ Plaintiff contends that defendant's claim of surprise was un-

timely since it first raised the point after lunch. Surprise should be claimed at the earliest opportunity. (*People v. Wesley* (1959), 18 Ill. 2d 138, 163 N.E.2d 500, *cert. denied* (1960), 364 U.S. 845, 5 L. Ed. 2d 69, 81 S. Ct. 87.) Here, however, it was obvious that defendant was surprised by Marshall's deviation from the written statement. Moreover, the trial court prevented further development of this point by refusing the requested sidebar. Finally, it is clear that the trial court would have refused to allow impeachment during direct examination even if defendant had more clearly stated it was surprised at that time, since the trial court repeatedly expressed its belief defendant could not impeach its own witness, at least absent a showing of hostility.

In light of the fact that the evidence was close on this particular issue and Marshall's testimony was particularly damaging to defendant, the refusal to allow defendant to impeach Marshall was clearly prejudicial. (*Cascio v. Bishop Sewer & Water Co.* (1954), 2 Ill. App. 2d 378, 119 N.E.2d 531.) For this reason the case must be reversed.

In light of the fact that we have already determined that there must be a new trial, we need not decide if the trial court's refusal to allow the expert testimony as to the timing, sequence, and location of the traffic lights was prejudicial error or whether the defendant's offer of proof was insufficient as plaintiff contends. On retrial, since there is no dispute as to the knowledge and expertise of Marshall Davies, the proffered witness, his testimony should be allowed. See *Ferdinand v. Yellow Cab Co.* (1976), 42 Ill. App. 3d 279, 355 N.E.2d 547, where the trial court did permit Davies' testimony.

Any evidence which has a natural tendency to establish the fact in controversy should be admitted. (*People v. Newsome* (1919), 291 Ill. 11, 125 N.E. 735.) The basic principle which animates our law of evidence is that what is relevant generally is admissible. (*People ex rel. Noren v. Dempsey* (1957), 10 Ill. 2d 288, 139 N.E.2d 780; *Geaschel v. Rokita* (1967), 89 Ill. App. 2d 161, 232 N.E.2d 204 (abstract of opinion).) Relevancy is established where the evidence offered tends to prove a fact in controversy or to render a matter in issue more or less probable. (*People v. Rodgers* (1972), 53 Ill. 2d 207, 290 N.E.2d 251; *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327, *appeal denied* (1977), 66 Ill. 2d 639; *Uebelein v. Chicago Transit Authority* (1967), 86 Ill. App. 2d 395, 230 N.E.2d 33; 4 Callaghan's Illinois Evidence sec. 5.03 (1964).) Where the issue is which party entered the intersection on a green light, evidence as to the timing and sequence may help to establish which witness' testimony is more credible. Thus

it is relevant and should be admitted.

The other material issue in controversy is whether the trial court erred in directing a verdict as to the amount of damage to the Mueller's automobile. The sole witness on this issue was plaintiff's husband, John Mueller. He stated that the car, a 1972 Oldsmobile, was in excellent condition prior to the accident in 1976. Over defendant's objection, an estimate of repairs was introduced into evidence. John Mueller testified that the estimate was paid. On cross-examination, the witness admitted that he only knew what work was done by looking at the estimate. For example, he had no personal knowledge what damage was done to the engine; he only knew there was engine damage from looking at the estimate. The court refused to permit further cross-examination intended to bring out the fact that the witness had no personal knowledge as to what repairs were done. Despite the fact that there was no evidence as to what repairs were actually performed and whether they were necessitated by the accident, the court directed a verdict as to the amount of property damage.

■ As was stated as far back as 1917 in *Coyne v. Cleveland* (1917), 208 Ill. App. 425, 428, which is directly in point:

"There was no testimony that these repairs were all made necessary by the injuries to the car, received in this collision. Plaintiff was able to describe very little of the damage done to the car and did not testify what repairs were needed. No one testified to the details as to the parts broken or injured. The car was heavy and had been owned and used by plaintiff three years without repairs. So far as appears, the Barley Manufacturing Company made such repairs as they thought proper. *** If plaintiff had testified that all these repairs for which this bill was rendered were made necessary by this collision, his subsequent examination showed that he could not possibly have known that, for he only knew a few of the more obvious items of the injury. Plaintiff relies upon the bill rendered as proving the reasonable cost of the repairs made necessary by the collision, under *Travis v. Pierson*, 43 Ill. App. 579. Before that case could apply, plaintiff should have proved that the repairs charged in this bill were all made necessary by the collision. That proof was wholly lacking."

Plaintiff's reliance on *Saunders v. Wilson* (1969), 114 Ill. App. 2d 380, 253 N.E.2d 89, is without merit. That case merely stands for the proposition that the repair bill may be introduced as presumptive evidence of the reasonable value of the repairs even though the bill is not stamped paid. But as *Saunders* points out, the bill itself does not

supply proof of what repairs were necessitated by the accident.

For the foregoing reasons the judgment of the trial court is reversed and the case remanded for a new trial in accordance with this opinion.

Reversed and remanded.

JIGANTI and LINN, JJ., concur.