STAN KNECHT, Plaintiff-Appellee, v. RADIAC ABRASIVES, INC., Defendant-Appellant.

Fifth District   No. 5—90—0468

Opinion filed October 7, 1991.

Mary Bassett-Stanford, of Salem, and Robert H. Bernstein, of Grotta, Glassman & Hoffman, P.A., of Roseland, New Jersey, for appellant.

Jack Johnston, of Burnside, Dees, Johnston & Choisser, of Vandalia, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

Plaintiff sued defendant, claiming that defendant discharged him in violation of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.4(h)), which states:

"It shall be unlawful for any employer *** to discharge *** or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act."

A Marion County jury found for plaintiff and awarded him $94,050 compensatory damages and $205,950 punitive damages. Defendant appealed. We affirm the judgment awarding compensatory damages but reverse the judgment awarding punitive damages and remand for a new trial.

Defendant contends that the circuit court erred in refusing to enter either a judgment notwithstanding the verdict, a new trial, or remittitur. Defendant argues that: (1) plaintiff had no claim under the Illinois Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.4(h)), because plaintiff could no longer perform his job; (2) the jury's verdict was against the manifest weight of the evidence; (3) the circuit court erred in instructing the jury on punitive damages; (4) the circuit court erred by refusing to admit defendant's list of favorably resolved workers' compensation claims into evidence; (5) the circuit court erred by refusing to permit one of defendant's witnesses to testify how defendant's personnel director handled previous workplace disputes; and (6) the circuit court abused its discretion in imposing sanctions pursuant to Supreme Court Rule 219 (134 Ill. 2d R. 219).

I

We address first the circuit court's refusal to enter judgment notwithstanding the verdict or to grant a new trial.

A circuit court should enter judgment notwithstanding the verdict when "all of the evidence, when viewed in its aspect most favorable

to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513.

A circuit court should grant a new trial when the jury's verdict is against the manifest weight of the evidence (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32), *i.e.*, when an opposite conclusion is clearly evident, or the jury's findings are unreasonable, arbitrary, and not based upon the evidence. (*Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302, 562 N.E.2d 282.) We examine the evidence to determine if the circuit court erred.

### UNDISPUTED FACTS

Plaintiff was severely shocked when he touched the switch on a mixing machine at defendant's plant. His supervisor sent him to the hospital where he was treated and released. After his release, however, plaintiff's hands swelled and ached, and by the following Monday, plaintiff reported to defendant that he was unable to work. Defendant's personnel director referred plaintiff to the company doctor, who in turn referred him to a hand specialist, who diagnosed carpal tunnel syndrome in both hands and bilateral compression of the medial and ulnar nerves of the wrists. The specialist recommended surgery and later operated on plaintiff's hands and wrists. Plaintiff began to heal, and the specialist gave him a return-to-work slip which stated:

> "(1) No heavy lifting over 10 pounds (2) no heavy pulling and pushing for 2 weeks."

### DISPUTED FACTS

Plaintiff testified that when he gave the personnel director the return-to-work slip, the director accused him of being "in cahoots" with the doctor to get a big settlement from the company, ushered him to the door, and told him not to return.

The director contradicted plaintiff, testifying that when plaintiff gave him the return-to-work slip, he told plaintiff he needed to call the insurance company to find out what to do since the return-to-work slip contained limitations, but when he called, the insurance company told him that it had found plaintiff another job.

A nurse testified, however, that the director also told her that he believed plaintiff suffered no real injury or was exaggerating his injury to get a big settlement. Also, a former co-worker of plaintiff testified that plaintiff could have returned to his old department despite his physical limitations.

This review of the evidence is by no means exhaustive, but it is indicative of the nearly evenly balanced factual disputes found throughout the record.

■ Defendant claims it is entitled to judgment notwithstanding the verdict because as a matter of law it is not guilty of retaliatory discharge or failure to reinstate under the Act, because plaintiff was physically unable to do his old job. The record, however, does not overwhelmingly support defendant's position, but merely shows that there was a question for the jury to resolve. On this record, a jury could infer, for example, that since the return-to-work slip placed limitations upon plaintiff for only two weeks, plaintiff could have performed his old job after two weeks, but did not return because he legitimately believed that the personnel director discharged him when he ushered him to the door and told him not to return, accusing him of being "in cahoots" with his doctor. The evidence, together with all reasonable inferences, supports the jury's verdict.

We, likewise, find that the verdict is supported by the manifest weight of the evidence.

## II

We next address defendant's claim that the circuit court erred in instructing the jury on punitive damages.

■ The issue presented by this case is whether a jury which finds for plaintiff in a retaliatory discharge case has the discretion to decide whether to award punitive damages. The circuit court ruled that the jury had no discretion and so instructed the jury:

> "If you find for the Plaintiff on the question of liability, then you must, in addition to any damages for past and future wages lost to which you find plaintiff entitled, fix an amount which will serve to punish the defendant and to deter it and others from the commission of like offenses."

We reverse the circuit court and hold that a jury may find for a plaintiff in a retaliatory discharge case, award compensatory damages, but refuse to award punitive damages. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.

Relying on the court's language in *Kelsay*, plaintiff argues that if the trial judge decides that the facts warrant the imposition of punitive damages, then the jury must impose an amount that will punish defendant and deter others from similar offenses. (See *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 359.) Plaintiff, however, misconstrues the supreme court's language. Procedurally, a punitive damages case is like a compensatory damages case. A court decides whether the evidence

makes a *prima facie* case for punitive damages; a jury decides whether to award punitive damages, and if so, in what amount. Neither *Kelsay* nor any case relying on *Kelsay* says that if a court finds that a *prima facie* case has been made, then a jury must impose punitive damages.

Plaintiff argues that giving a jury the freedom to refuse to impose punitive damages renders the concept of punitive damages useless. We disagree. Punitive damages are imposed to punish the offender and to deter others from committing like offenses in the future. (*Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 359.) Americans, however, have a longstanding tradition: the power to punish carries with it the power to be lenient. The jury, with its unique ability to articulate community values, should decide whether punitive damages should be imposed.

The instruction, therefore, was erroneous, and we reverse and remand to the circuit court for a new trial on punitive damages.

### III

■ Defendant claims that the jury's award of compensatory damages was excessive. We disagree. The amount of damages awarded is generally within the sound discretion of the jury. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 485 N.E.2d 4.) Nevertheless, a reviewing court may order a new trial on damages if it finds that the jury's award bears no reasonable relation to plaintiff's loss. (*Netzel v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 808, 537 N.E.2d 1348.) Here, we find sufficient evidence in the record to support the jury's award. Plaintiff presented evidence showing the loss of wages suffered as a result of the discharge, and the jury was charged to fix an amount that would fairly and adequately compensate plaintiff, taking into account that the amount awarded should be the present cash value of his future loss. We find, therefore, that the amount of the award is proper, and we affirm the judgment awarding compensatory damages.

### IV

Next, we address an evidentiary issue. The circuit court refused to allow defendant's witness to testify how its personnel director had handled previous workplace disputes and also refused to allow into evidence a list of previously filed and favorably resolved workers' compensation claims. We examine the proffered evidence.

Defendant called defendant's shop steward and asked him if he had always found the personnel director to have been helpful and fair

when dealing with workplace disputes. Plaintiff objected, and the circuit court heard counsel at side bar. Defendant's counsel argued:

> "DEFENDANT'S COUNSEL: Your honor, \*\*\*, [t]his man is a chief shop steward who has held that position for fifteen years and had occasion to deal with [the director] twenty-five times a year in efforts to resolve complaints. I'm now asking him if [the director] has \*\*\* ever been unfair \*\*\*.
>
> THE COURT: Are you saying that you are going to attempt to prove that he was fair in his dealings with Mr. Knecht by saying that the shop steward knew of no time when he was unfair with anyone else?
>
> DEFENDANT'S COUNSEL: Yes.
>
> THE COURT: I'm not going to allow that."

During a recess that followed, defendant's counsel told the court that he intended to introduce a series of documents dealing with other workers' compensation claims since 1985, the purpose of which was to "show that Radiac does not mistreat or refuse to employ workers' compensation claimants." Plaintiff's counsel objected, and the circuit court refused the offer reasoning that it was no more relevant than the shop steward's testimony.

■ The circuit court's ruling was proper for three reasons.

## A

First, the evidence from the shop steward was lay opinion evidence. The thrust of the questioning was to establish that the shop steward had the opinion that the personnel director had been fair in dealing with past workplace disputes. As a general rule, "[t]he closer the subject of the [lay] opinion approaches critical issues, the more likely it is that the court will require more concrete details from the witness, either alone or prior to the offering of an opinion." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §701.1, at 483 (5th ed. 1990).) In the case at bar, the issue was whether defendant had retaliated against plaintiff. The opinion called for was one of "fairness," a matter closely approaching the critical issue. Therefore, although "the distinction between fact and opinion is so frequently impossible to delineate \*\*\* [much is left] to the discretion of the trial court." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §701.1, at 483 (5th ed. 1990).) On this record, we see no reason to reverse this discretionary ruling. Furthermore, this evidence was proffered, in effect, to prove the character of the defendant, namely that defendant had the character trait of treating its employees "fairly." Illinois allows character to be proved only by evidence of rep-

utation and never by opinion. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §405.2 (5th ed. 1990).

## B

Second, evidence is relevant when it has a tendency to prove a fact in controversy or render a matter in issue more or less probable. (*Marut v. Costello* (1965), 34 Ill. 2d 125, 214 N.E.2d 768; *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 466 N.E.2d 958; *Mueller v. Yellow Cab Co.* (1982), 110 Ill. App. 3d 504, 442 N.E.2d 595.) The shop steward's opinion that defendant was "fair" in the past has no real tendency to make it more or less probable that defendant was being "fair" in the instance being tried. It, therefore, was irrelevant.

Evidence of conduct of a person on another occasion is not relevant on the question of his conduct on the occasion in issue unless offered to show habit, state of mind, knowledge, or intent. (*Dillon v. U.S. Steel Corp.* (1987), 159 Ill. App. 3d 186, 511 N.E.2d 1349.) Although *Dillon* includes in its rubric both state of mind and intent, the validity of that inclusion is viewed with some dubiety, because it is generally noted that while evidence of state of mind and intent is admissible in criminal cases, that rationale does not generally support admission of such evidence in civil cases. (See, *e.g., Crawford v. Yellow Cab Co.* (N.D. Ill. 1983), 572 F. Supp. 1205.) To further focus on the *Dillon* formulation, it is likewise clear in this case that the excluded evidence was not offered to prove that defendant had knowledge of some condition, *e.g.*, that its product was defective. The only relevance, therefore, was to establish either defendant's habit or routine business practice of not mistreating or refusing to employ workers' compensation claimants. To whatever extent Illinois courts have indicated willingness to follow Federal Rule of Evidence 406 (see *Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 484 N.E.2d 365, *aff'd* (1987), 115 Ill. 2d 471, 505 N.E.2d 331; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §406.1 (5th ed. 1990)), the fact is that the evidence refused in the case at bar is not proper evidence of habit or routine practice.

### 1. HABIT

Insofar as habit is concerned, the evidence must establish conduct that becomes semiautomatic, invariably regular, not merely a tendency to act in a given manner. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §406.1 (5th ed. 1990); *Simplex, Inc. v. Diversified Energy Systems, Inc.* (7th Cir. 1988), 847 F.2d 1290.) In

the case at bar, there is a threefold barrier to the admission of this evidence to establish habit.

### a

First, in general, it should be noted that a semiautomatic, invariably regular act is one in which discretion—that is, the studied reflection and choosing between options, however fleeting, present in the decision-making process—has been removed. The conduct that constitutes habit, therefore, takes on characteristics of a ministerial rather than a discretionary act. In the case at bar, neither the proof of "fairness" to employees, nor the admission of documents dealing with other workers' compensation claims proves a semiautomatic, invariably regular response. Each decision to pay workers' compensation and to retain those who have received workers' compensation necessarily is a discretionary act, not semiautomatic and invariably regular. To hold otherwise might or could effectively kill suits brought to end discrimination in the workplace: the employer might escape, proving it did not discriminate by proving it had not in the past. Defendant's argument, therefore, makes bad policy and is rejected.

### b

Secondly, there is another barrier to the reception of this evidence. It is true that some habit testimony has been accepted even though the so-called "habit" contains an element of discretion. Examples are: lending money without taking a note in return (*Stolp v. Blair* (1873), 68 Ill. 541); promptness in paying debts (*Thorp v. Goewey* (1877), 85 Ill. 611); party affiliation to show how a person voted (*Sorenson v. Sorenson* (1901), 189 Ill. 179, 59 N.E. 555); and consulting a banker or lawyer as bearing on execution of a note (*Wolf v. People's Bank* (1929), 255 Ill. App. 127). In these cases, however, the admission of habit evidence was justified on grounds that there was a strong necessity for its reception. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §406.3 (5th ed. 1990); see also *Bradfield v. Illinois Central Gulf R.R. Co.* (1987), 115 Ill. 2d 471, 505 N.E.2d 331.) There has been no strong showing of necessity for the admission of this evidence in the case at bar. Furthermore, "given the age of the [*Stolp, Thorp, Sorenson* and *Wolf*] cases and the emphasis upon the hardship aspect as a justification for the use of habit testimony *** it is certainly doubtful whether habit evidence can generally be said to be admissible for the purpose of inviting the inference that the person [or corporation] probably acted consistently with

*** habit." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §406.3, at 212 (5th ed. 1990).

### c

Thirdly, as to admissibility of this evidence to establish habit, there was an insufficient foundation for its admission. The other instances proffered by defendant were not sufficiently detailed and specific so that, when compared to the case at bar, the court could rule that the situations were so similar that the inference that defendant did no wrong in this case, because it had done no wrong in the others, was reliable and not mere speculation or conjecture. See *Bradfield v. Illinois Central Gulf R.R. Co.* (1987), 115 Ill. 2d 471, 480, 505 N.E.2d 331, 336 (Ryan, J., dissenting).

### 2. ROUTINE PRACTICE

The routine practice of an organization differs conceptually from habit. That difference, in at least one small way, finds its way into the liturgy of foundation. Whereas habit, if otherwise admissible, does not depend on corroboration, routine practice does; without some corroborating proof that the routine business practice was followed on the occasion in question, evidence of an existing routine cannot be admitted. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §§406.3, 406.4 (5th ed. 1990) (in which it is argued that corroboration should be discarded with as a condition of admissibility).) The evidence proffered in the case at bar is not evidence of a routine practice. The types of conduct qualifying for admission as a routine business practice are ministerial acts: mailing, filing, sending notice, and the like. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §406.4 (5th ed. 1990).) In the case at bar, the evidence refused was opinion testimony that defendant treated its employees fairly and does not mistreat or refuse to employ workers' compensation claimants. These are not ministerial acts; they are not routine business practice; they are discretionary.

The circuit court correctly refused this evidence for all these reasons.

### V

■ Lastly, we address defendant's claim that the circuit court erred in imposing sanctions pursuant to Supreme Court Rule 219. (134 Ill. 2d R. 219.) Rule 219 permits the circuit court to sanction a party or her attorney for abuse of discovery rules. This court's review of the imposition of such a sanction is limited to whether the circuit

court abused its discretion. (*Big Three Food & Liquor, Inc. v. State Farm Fire & Casualty Co.* (1979), 79 Ill. App. 3d 63, 398 N.E.2d 264.) Plaintiff served a request to produce financial data of defendant on February 6, 1990. Defendant never complied, and when challenged, defendant's counsel claimed the request to produce was never received. Plaintiff's counsel then told defense counsel what was requested, but defense counsel argued it was not discoverable. The circuit court ordered defendant to comply within seven days. On May 4, 1990, plaintiff received an unauthenticated document showing defendant had a negative net worth. The document, which purported to be a response to plaintiff's request to produce, was a summary of information taken from defendant's financial statement. Plaintiff asked for a continuance for lack of compliance. The court granted it saying that defendant's response was "nothing" and ordered defendant's comptroller to be in court the following Monday to disclose the financial data requested. At the hearing the following Monday, the comptroller testified about the financial data of only the plant where plaintiff worked and not the corporation as a whole. The court ordered data from the corporation's other plant as well. After much argument and delay, defendant finally disclosed an audited financial report of the corporation on Tuesday, May 8, 1990. Instead of a negative net worth, the corporation showed a net worth of over $7 million. The record clearly shows that defendant dragged its feet in responding to plaintiff's request to produce, and even when the circuit court ordered the information produced, defendant still did not fully comply, the result of which was a delay in the proceedings. We find no abuse of discretion and affirm the circuit court on Rule 219 sanctions.

The circuit court is affirmed in part and reversed in part, and this matter is remanded for a new trial on punitive damages.

Affirmed in part; reversed in part and remanded.

CHAPMAN, J., concurs.

JUSTICE GOLDENHERSH, specially concurring:

I concur in the results reached by my colleagues but wish to make further comment in regard to section II dealing with instructing the jury on punitive damages.

*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, does not mandate a punitive damages instruction to the jury in every retaliatory discharge action. The clear import of *Kelsay*, however, is that without a punitive damages component in the retaliatory dis-

charge cause of action, the action itself could very well become a tiger without teeth. Our supreme court in *Kelsay* stated the following:

"In the absence of the deterrent effect of punitive damages there would be little to dissuade an employer from engaging in the practice of discharging an employee for filing a workmen's compensation claim. For example in this case, the plaintiff was entitled to only $749 compensatory damages. We noted above the very real possibility that some employers would risk the threat of criminal sanction in order to escape their responsibilities under the Act. The statute makes such conduct, as is involved in this case, a petty offense (Ill. Rev. Stat. 1975, ch. 48, par. 138.26), which is punishable by a fine not to exceed $500 (Ill. Rev. Stat. 1975, ch. 38, par. 1005—9—1(4)). The imposition on the employer of the small additional obligation to pay a wrongfully discharged employee compensation would do little to discourage the practice of retaliatory discharge, which mocks the public policy of this State as announced in the Workmen's Compensation Act [(Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*)]. In the absence of other effective means of deterrence, punitive damages must be permitted to prevent the discharging of employees for filing workmen's compensation claims." (74 Ill. 2d at 186-87, 384 N.E.2d at 359.)

I interpret *Kelsay*, and especially the paragraph quoted above, as evidencing a strong policy statement made by our supreme court in favor of inclusion of punitive damages as part of the standard retaliatory discharge case. While neither *Kelsay* nor any subsequent authority cited to this court mandates charging the jury with a punitive damages instruction, I interpret the clear implication of *Kelsay* to be that the circuit and appellate courts and the courts of review should keep in mind that without a punitive damages component a retaliatory discharge cause of action would be an action without practical consequences or deterrence effect in regard to the practice of retaliatory discharge, which "mocks the public policy of this State."

With these additional comments, I concur with my colleagues in the disposition of the issues noted in section II of the opinion and with the rest of this opinion.